United States District Court
Southern District of Texas

**ENTERED**

February 12, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DIRK STANLEY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-3284 |
| | § | |
| LARRY LATCHMEPERSAD SAWH, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Dirk Stanley ("Stanley") asserts this Fair Labor Standards Act ("FLSA") action against defendant Larry Sawh ("Sawh") seeking to recover unpaid regular, minimum wage and overtime compensation; liquidated damages; and attorney's fees owed to Stanley.  Dkt. 1.

On November 16, 2015, Stanley and Sawh agreed to waive a jury trial and submit the case to the court.  The court conducted a bench trial on November 16, 2015.  Based on the trial testimony, admitted exhibits, the arguments of counsel, the pleadings, other relevant documents in the record, and the applicable law, the court is of the opinion that final judgment should be ENTERED in favor of Sawh.

### I. SUMMARY OF THE EVIDENCE

Larry Sawh is an individual that owns and operates two shops: Larry's Resale Shop and Junior's Tire Shop.  The shops, located across the street from each other, generally maintain hours of operation between 8:00 a.m. and 8:00 p.m. and are open seven days a week.  Sawh manages Larry's Resale Shop while his brother, Oscar Sawh, manages Junior's Tire Shop.  The primary dispute in this lawsuit is whether and to what extent Stanley was employed by Sawh at these two

shops.  With regards to this issue, the testimony of Stanley and his witnesses is in stark contrast to the testimony of Sawh and his witnesses.  However, even if the court were to resolve all factual disputes in favor of Stanley, the court finds that Stanley cannot establish that he is covered under FLSA as a matter of law.  Therefore, the court need not resolve any factual disputes.  For background purposes, the court will briefly summarize the testimony of each witness.

Stanley testified that he regularly worked for Sawh, at both Junior's Tire Shop and Larry's Resale Shop, from July 2012 through April 2013.  He claims that, at the direction of Sawh and his brother, Oscar, he carried out various duties, including mechanic's work, oil changes, cleaning, brake work, tire repair and replacement, stocking inventory, preparing machines for resale, placing merchandise for sale and viewing, preparing the store for opening, and assisting with various closing duties at the end of the day.  He also stated that he trained Sawh and Oscar on how to operate a tire machine when Junior's Tire Shop first opened up.  Stanley claims that for the first sixteen (16) weeks of his employment with Sawh, he worked eighty four (84) hours per week (seven (7) days per week at twelve (12) hours per day) and was paid $45 per day for a weekly total of $315.00.  During the final twenty three (23) weeks of his employment, Stanley claims that he worked seventy two (72) hours per week (six (6) days per week at twelve (12) hours per day) and was paid $35 per day for a weekly total of $210.00.  Sawh allegedly paid Stanley in cash every day.  Stanley's Exhibit 1 provides a breakdown of what Stanley alleges that he is owed in minimum wage and overtime pay over the thirty nine (39) weeks of his employment. Dkt. 45.  In total, Stanley alleges that he is owed $17,283.20 in wages.  *Id.*

Sawh, on the other hand, maintains that Stanley never worked for him.  Sawh testified that Stanley and a man named Walter Jordan would come by his shops in the evening time, "maybe once,

twice a week, sometimes on weekend[s]," offering to do various things for Sawh.  He claims that he never instructed or asked Stanley or Jordan to do any work for him.  However, he did admit that he would allow Stanley and Jordan to put air in customers' tires and collect tips from them.  He also stated that Stanley would occasionally help Sawh with whatever he was working on in the evening, such as washing and moving tires.  In exchange for their assistance, Sawh would occasionally buy them pizza or give them small amounts of cash so that they could buy dinner.  Sawh testified that he never kept any records of Stanley's hours or of how much he paid him.

Sawh's brother, Oscar, testified that neither shop has ever had any employees.  He claims that he saw Stanley around the shop on approximately five (5) different occasions.  Oscar insisted that Stanley never worked for him at Junior's Tire Shop.  Oscar and Sawh both testified that Junior's Tire Shop opened in October of 2012.  However, Stanley testified that he was working at both Larry's Resale Shop and Junior's Tire Shop in July of 2012.

Floyd Johnson, an independent vendor, testified that he had an arrangement with Sawh where he was allowed to station his business at Larry's Resale Shop and in exchange Johnson would help Sawh out with minor tasks.  Johnson stated that Sawh and his son, Junior, ran Larry's Resale Shop and Oscar ran Junior's Tire Shop.  He claimed that no other employees were at Larry's Resale Shop.  However, according to Johnson, at Junior's Tire Shop "a bunch of random guys would come up and ask can they make a couple of dollars to put air [in customer's tires] . . . That was about it."  Johnson insisted that this was not a consistent daily routine for anyone, including Stanley.  He testified that he would see Stanley at either Larry's Resale Shop or Junior's Tire Shop approximately once or twice a week.  He further testified that Stanley would "come for a couple of hours to make money" by doing things around the store like helping Sawh's son, Junior, move things around.  Johnson

3

acknowledged that he was not always around the shops because he was constantly in and out of Larry's Resale Shop to make deliveries and run errands.

Stanley's sister, Reba White, testified that (1) Stanley worked at both Junior's Tire Shop and Larry's Resale Shop for twelve hours a day; (2) she had gotten oil changes done at Sawh's shop that were personally performed by Stanley; (3) she would bring Stanley dinner while he was working at the shops on Sundays; and (4) she would drive Stanley to and from work on Wednesdays.

Gerald Griffith testified that he used to sell used tires to Junior's Tire Shop approximately three (3) or four (4) times a week for a period of about four (4) to six (6) months but that he stopped selling tires approximately eighteen (18) months ago. He testified that he would deliver the tires in the morning and that he usually dealt with Stanley. He stated that Stanley would be the one to unload the tires, determine how many and which tires to buy, and would also return certain tires that the shop didn't need. He stated that there were some occasions where he dealt with Oscar Sawh instead of Stanley.

## II. INDIVIDUAL COVERAGE UNDER FLSA

Sawh disputes that Stanley was an employee as defined by FLSA. Indeed, the primary factual disputes at trial related to the number of hours that Stanley worked per week, the type of work he performed, and whether and to what extent Stanley was supervised and directed by Sawh to perform work. However, even if the court resolved all of these factual disputes in favor of Stanley, the court finds that he did not engage in commerce or in the production of goods for commerce and is therefore not covered under FLSA.[1] Accordingly, the court need not resolve any of the factual

---

[1]The question of whether coverage under FLSA applies to Stanley is not jurisdictional and is appropriately handled at the merits stage. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516, 126 S.Ct. 1235 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as

disputes related to Stanley's alleged employment.

FLSA requires certain "employers" to pay qualifying employees for overtime work (hours in excess of forty hours per week) at a rate not less than one and one-half times their regular rate.  29 U.S.C. § 207(a)(1).  The overtime provisions of FLSA apply to employees who are either personally engaged in commerce or in the production of goods for commerce (individual coverage) or employed by an enterprise engaged in commerce or in the production of goods for commerce  (enterprise coverage).  *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).  Either individual coverage or enterprise coverage is sufficient to invoke FLSA's requirements.  *Id*.  In this case,  Stanley's claim is based solely on individual coverage.  Dkt. 1 at 1 (alleging that the "Plaintiff was, individually, directly engaged in interstate commerce").

Stanley bears the burden of proving that individual coverage under FLSA applies to him. *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc*., 474 F.3d 828, 829 (5th Cir. 2007) (citing *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90, 63 S.Ct. 125 (1942)).  FLSA protects individual employees who are "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 207(a)(1), regardless of whether their employers qualify as covered enterprises.  "The test . . . for FLSA's 'engaged in commerce' requirement is 'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity.'"  *Williams v. Henagan*, 595 F.3d 610,

---

jurisdictional, courts should treat the restriction as nonjurisdictional in character.");  *Hopkins v. Cornerstone Am.*, 512 F. Supp. 2d 672, 681 (N.D. Tex. 2007) (applying *Arbaugh* and holding that whether the plaintiff was an "employee" under FLSA "does not affect federal-court subject-matter jurisdiction but, instead," goes to the merits of the FLSA claim);  *Rivera v. Heights Landscaping, Inc.*, No. 03C6428, 2004 WL 434214, at *1 (N.D. Ill. Mar. 5, 2004) ("Whether plaintiffs fall within the protection of the FLSA is an issue regarding the merits of their claims, not the court's jurisdiction.").

621 (5th Cir. 2010) (per curiam) (quoting *Sobrinio,* 474 F.3d at 829). Work that is purely local in nature does not meet FLSA's requirements, but "[a]ny regular contact with commerce, no matter how small, will result in coverage." *Sobrinio*, 474 F.3d at 829.

"[T]he test of whether one is in commerce is obviously more exacting than the test of whether [an] occupation is necessary to production for commerce." *Armour & Co. v. Wantock*, 323 U.S. 126, 131, 65 S.Ct. 165 (1944). The test requires the court to consider whether the work that plaintiff himself performed is, in practical effect, a part of either commerce or the "functioning of an instrumentality or facility of interstate commerce." *Sobrinio*, 474 F.3d at 829. In answering this question, courts routinely look to whether the employee's work engages him in the "actual movement of persons or things." *Mendoza v. Detail Sols.*, LLC, 911 F. Supp. 2d 433, 440 (N.D. Tex. 2012) (citing *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006)).

The Fifth Circuit has found that employees engaged in commerce when "their work was entwined with a continuous stream of [interstate] travel." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1125 (5th Cir. 1979). For example, the Fifth Circuit has held that employees that transport passengers to international transportation points are covered under FLSA. *See Marshall v. Victoria Transp. Co.*, 603 F.2d 1122 at 1125 (5th Cir. 1979) (holding that bus operators transporting passengers to international transportation points are covered under FLSA, and finding that "transporting persons making international journeys was a regular, recurring and substantial part of the work of defendants' employees"); *see also Airlines Transp. v. Tobin*, 198 F.2d 249 at 251 (4th Cir. 1952) (holding that limousine drivers who contracted exclusively to take passengers to and from airport are covered under FLSA). However, in *Sobrinio*, an employee of a motel serving the Texas Medical Center who worked as a janitor, security guard, and driver for the motel's guests was not

covered under FLSA.  474 F.3d at 829.  He ferried guests on errands to local stores but never drove to the airport or other transportation centers.  *Id*. The court held that although the plaintiff was transporting guests that were from out of state, the employee was not engaged in commerce under FLSA because there was no evidence that the people staying at the defendant's motel were engaged in interstate commerce.  *Id*.

At trial, Stanley's counsel argued that Stanley was engaged in interstate commerce by performing oil changes and changing tires on automobiles that "would then go on to the interstate highways and there by [sic] implicating interstate commerce."  However, Stanley failed to provide evidence to establish that he worked on any automobiles that traveled across the interstate.  Although Sawh admitted that Junior's Tire Shop would sell and install tires on cars that "would go on the interstate . . . around Houston," this alone is insufficient to establish individual coverage under FLSA.  First, this evidence speaks only to whether the *enterprise* engaged in commerce.  No evidence was presented to show that Stanley personally worked on any of the cars that were driven on an interstate highway.  However, even if Stanley had established that he personally worked on automobiles that traveled across state lines, that would not be enough to establish individual coverage.  In *Mendoza*, the Northern District of Texas held that "the mere washing of cars that have once moved in commerce is not closely related to the movement of those cars in commerce and cannot be considered, in practical effect, part of the 'functioning of an instrumentality or facility of interstate commerce.'"  911 F. Supp. 2d at 440 (citing *Sobrinio*, 474 F.3d at 829).  Likewise in this case, even assuming that Stanley worked on cars that previously or subsequently moved in interstate commerce, this would not be considered part of the functioning of an instrumentality or facility of interstate commerce.  *See Sobrinio*, 474 F.3d at 830 (noting that although plaintiff was transporting

7

customers that were traveling from out of state, "[plaintiff's] driving activities cannot be viewed as part of a constant stream of interstate travel, since his passengers were not in the midst of such travel").

Nor did Stanley establish that he was engaged in the "production of goods for commerce." Stanley's counsel suggested that he engaged in interstate commerce by working on various items, such as air conditioners, space heaters, and tires for resale to customers.  Dkt. 47 at 3.  However, Stanley failed to provide any evidence that Sawh's shops moved any of these products across state lines or sold products to out of state customers.  In fact, all of  the evidence suggests that these products were sold exclusively to local customers.  There is some evidence, although tenuous, to suggest that Sawh purchased products for resale that may have been manufactured out of state.  For example, Stanley listed a few brands of air conditioners and refrigerators that were sold at Larry's Resale Shop and listed several brands of tires that were sold at Junior's Tire Shop.  Even if the court were to accept this aspect of Stanley's testimony (which was disputed by Sawh and his brother) and infer, based on the brand name, that any of these products were manufactured out of state, that would still be insufficient to create individual coverage.  *See McLeod v. Threlkeld*, 319 U.S. 491, 494, 63 S. Ct. 1248, 1250 (1943) ("So handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not.").

Therefore, even when accepting all of Stanley's testimony and resolving all factual disputes in Stanley's favor, the court finds that Stanley's activities were purely local in nature and fall outside of FLSA's protections.  Given Stanley's failure to sustain his burden of showing that coverage under FLSA applies, judgment must be entered in favor Sawh.

### III. Conclusion

For the foregoing reasons, JUDGMENT is entered in favor of defendant Larry Sawh.

Plaintiff shall take nothing.

Signed at Houston, Texas on February 12, 2016.

_____
Gray H. Miller
United States District Judge